**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF ELECTRIC SOLIDUS INC. D/B/A/ SWAN BITCOIN FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:26-mc-00124-LJL |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**APPLICATION FOR AN ORDER TO TAKE DISCOVERY**
**PURSUANT TO 28 U.S.C. § 1782**

**PRELIMINARY STATEMENT**

Respondent Cantor Fitzgerald's ("Cantor") opposition to Swan's Application for Judicial Assistance Pursuant to 28 U.S.C. § 1782 ("1782 Application") attacks Swan and its CEO, but does not identify any actual deficiency in the 1782 Application. Cantor's primary legal argument is that an anticipated derivative proceeding to be brought in England does not satisfy the section 1782 requirement that the discovery be "for use" in a foreign proceeding, because Swan's ability to bring the proceeding hinges on obtaining approval from the BVI Court.[1] But Cantor all but ignores the pending proceeding in the BVI, on which the Application is also based, and which undeniably satisfies all statutory and discretionary requirements. As Cantor asserts no valid basis for denial of the 1782 Application, the Court should grant the Application and authorize Swan to serve subpoenas on the respondents.

**ARGUMENT**

### I.    Swan Has Not Previously Litigated the Matters at Issue in the Foreign Proceedings

Swan and Tether entered a BVI-incorporated Bitcoin mining joint venture called 2040 Energy. Swan's CEO served as director, along with two Tether-Appointed Directors. In the Foreign Proceedings, Swan intends to assert derivative claims against the Tether-Appointed Directors for, *inter alia*, breach of fiduciary duties, including through the diversion of Mining Assets away from 2040 Energy to Tether and/or Tether-controlled entities. The Rain and Hell Fire Plan for the Mining Asset Diversion, including the theft of Swan personnel and proprietary information, took place shortly after Swan provided Cantor (and then-CEO Lutnick) with confidential valuation information about its business, which Swan believes may have been improperly shared by Cantor with Tether. Cantor's adversarial and inflammatory opposition to the

---

[1] Capitalized terms are defined in the 1782 Application (ECF No. 1).

1782 Application only reinforces that view. Cantor and Tether had a close business relationship, and Swan seeks to determine whether Cantor (and Lutnick) have information regarding whether and to what extent the Mining Assets Diversion was a pre-planned and coordinated violation of BVI law.

Cantor characterizes the Application as "the latest chapter[] in a legal vendetta" that has already been rejected by courts, Opp. at 1, but this bold assertion is not based in fact. In a related proceeding in California that did not involve Tether,[2] Swan conceded that the Machine Assets belong to 2040 Energy, rather than Swan, such that 2040 Energy is the proper plaintiff to assert claims against the Tether-appointed Directors. That is precisely why Swan now seeks permission from the BVI Court to bring derivative claims – in the name of 2040 Energy, rather than Swan – against the Tether-appointed Directors (the "BVI Application"). Second Declaration of Jerry Samuel dated April 16, 2026 ("Second Samuel Decl.") ¶¶ 2-4. There was no adjudication on the merits in the California case, and Swan has not yet asserted *any* claims in the pending proceeding in the U.K.,[3] which was initiated by Tether. Therefore, there is no basis for the assertion that Swan seeks "to rehash these same claims in the form of a derivative suit," Opp. at 2. The Foreign Proceedings reflect a procedurally appropriate effort to pursue claims in the proper forum, not an attempt to relitigate issues already decided.

## II.     The Evidence Sought is "For Use" in a Pending BVI Proceeding.

As explained in the Application, Petitioner intends to use the requested discovery (1) in the pending BVI Proceeding, *see* Second Samuel Decl., Exh. 1,[4] in which Swan seeks leave to file a

---

[2] *Electric Solidus, Inc. v. Proton Management Ltd et al.*, No. 2:24-cv-8280 (C.D. Cal).

[3] *Tether Investments S.A. de C.V. and 2040 Energy Limited v. Electric Solidus*, CL-2025-000016.

[4] Cantor accuses Swan of "depriving the Court (and Cantor) of the ability to fully assess the factors that are relevant to determining whether this Petition should be granted," by not attaching the BVI claim to its Application, and baselessly asserts that the reason is that "it is unlikely to support the Petition." Opp. at 10. However, there is no requirement that a foreign claim be attached to a section 1782 application, and it is unclear what Cantor thinks it would

2

derivative suit on behalf of 2040 Energy; and, if leave is granted, (2) in a contemplated derivative proceeding in England. Cantor does not dispute that the pending BVI Proceeding – which it all but ignores – satisfies Section 1782's "for use" requirement. Declaration of Jerry Samuel in Support of 1782 Application dated March 23, 2026 ("First Samuel Decl."), ECF No. 3 at ¶ 17.

Cantor's sole attack on Swan's request for discovery in support of the BVI Proceeding is that it "ha[s] no bearing on Swan's application to the BVI High Court." Opp. at 12. Cantor does not explain this assertion, which, in any case, is undermined by Cantor's acknowledgement that the BVI Court will consider, *inter alia* "whether the proceedings are likely to succeed" in determining "whether to grant permission," Opp. at 8. The discovery that Swan seeks is relevant to the merits of the derivative claim, which the BVI Court will consider in deciding whether to grant the BVI Application. The "bearing" of the discovery on the BVI Proceeding is apparent.

Cantor instead focuses its attention on the Anticipated English Proceeding, which Swan will initiate if the BVI Court grants leave. The Court need not determine whether the Anticipated English Proceeding is also a proper basis for section 1782 relief – though in fact it does provide such basis.[5] Where a pending proceeding satisfies the "for use" requirement, the Court "need not address whether the Anticipated Litigation would also satisfy the requirement." *See In re SBK Art LLC*, No. CV 24-MC-0147 (PAE) (RFT), 2024 WL 4264893, at *7 (S.D.N.Y. July 30, 2024), *aff'd*

---

have gleaned from the claim form that it cannot get from the declaration from Swan's BVI counsel. In any case, Swan has nothing to hide, and submits the claim form herewith.

[5] The Anticipated English Proceeding also satisfies the "for use" requirement and all other section 1782 requirements. *See* Mem. of Law in support of Application (ECF No. 2) ¶¶ 86-90. The cases that Cantor cites are distinguishable. In *In re BonSens.org*, 95 F.4th 75, 81–82 (2d Cir. 2024), speculative appellate relief following repeated adverse rulings by lower courts did not satisfy the "for use" requirement, but here, there has been no adverse decision against Swan on the merits. In *IJK Palm LLC v. Anholt Services USA, Inc.*, 33 F.4th 669 (2d Cir. 2022), the applicant conceded it lacked standing and merely hypothesized paths to cure that defect. In contrast, Swan's application to bring the derivative claim is pending and is likely to succeed. *See* First Samuel Decl. ¶¶ 5-18; Second Samuel Decl. ¶¶ 2-4.

168 F.4th 68 (2d Cir. 2026). Accordingly, Cantor's speculation regarding the ultimate success of the BVI Application is irrelevant.

The strength of the BVI Application is also irrelevant to the question of whether discovery is appropriately allowed in aid of the BVI Proceeding. Cantor baselessly asserts that Swan is pursuing a personal grievance, rather than acting on behalf of 2040 Energy, such that the BVI Court is likely to deny leave to bring the derivative proceeding. Opp. at 9-10. Swan vehemently denies the assertion and rejects that the BVI Application is likely to fail on this basis.[6] But, in any case, the merits of that proceeding are to be adjudicated by the BVI Court, and are not a matter for this Court to decide. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (district court's focus is not on the merits of the proposed claim, but on the movant's "practical ability to inject the requested information into a foreign proceeding"); *In re Zouzar Bouka; Vision Indian Ocean S.A.*, 637 F. Supp. 3d 74, 84 (S.D.N.Y. 2022) *modified on reconsideration sub nom. In re Bouka*, 654 F.Supp.3d 283 (S.D.N.Y. 2023). ("[W]e decline to probe the validity of the [foreign proceeding] – whether on the substance of the charges or on the issue of whether [petitioner] was authorized to initiate it. *What matters is whether the proceeding was in fact instituted and whether it is in fact receptive to evidence.*") (emphasis added). Instead, the "for use" requirement carries its ordinary meaning, that the evidence "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Swan has the ability to use and intends to use the requested evidence in the BVI Proceeding to establish that the contemplated

---

[6] The article that Cantor cites (Opp. at 9 n. 7) explains that where good faith is disputed, the BVI Court examines the applicant's predominant purpose in bringing the derivative claim. Where there is a legitimate predominant purpose, good faith will ordinarily be found. The same article explains that a breakdown in relations between shareholders, or the existence of parallel or unpursued proceedings elsewhere, is insufficient to establish bad faith. If anything, the article undermines Cantor's argument. *See* David Harby, *Derivative Claims in the British Virgin Islands,* CANDEY (July 2025), https://www.candey.com/derivativeclaimsinthebritishvirginislands.

derivative proceeding is likely to succeed. *See* First Samuel Decl. ¶¶ 12-13. Therefore, the "for use" requirement is satisfied.

Since Cantor does not dispute that the other two statutory requirements of section 1782 – that Cantor resides or is found in this district, and that Applicant is an "interested person" – are satisfied, the 1782 Application should be granted.

### III.    The *Intel* Factors Also Weigh in Favor of Granting the Application.

#### A.  Cantor and Lutnick Are Not Participants in the Foreign Proceedings

Cantor and Lutnick are not participants in the Foreign Proceedings. Cantor does not dispute this, but asserts that the first *Intel* factor weighs against granting the 1782 Application because some of the requested discovery is "obtainable from the parties to the foreign proceeding," Opp. at 11. However, the Second Circuit has expressly rejected that a foreign litigant must exhaust its discovery options abroad before seeking section 1782 assistance. *See In re Malev Hungarian Airlines,* 964 F.2d 97, 100 (2d Cir. 1992) (concluding that "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782"); *In re Gorsoan Ltd. & Gazprombank OJSC,* No. 13 MISC. 397-PGG, 2014 WL 7232262, at *9 (S.D.N.Y. Dec. 10, 2014), *aff'd sub nom. Gorsoan Ltd. v. Bullock*, 652 F. App'x 7 (2d Cir. 2016) ("[A] § 1782 applicant need not exhaust foreign discovery remedies."). And, in any case, Tether is not, as Cantor incorrectly asserts, a party to the BVI Proceeding; the respondent in that proceeding is 2040 Energy. *See* Second Samuel Decl. ¶¶ 2-3 Exh. 1.

Even if some discovery were obtainable from Tether in the BVI Proceeding (it is not),[7] the argument also fails because Cantor ignores that most of the information that Swan seeks is exclusively in the possession of Cantor and Lutnick. For example, Swan seeks Cantor's internal

---

[7] *See* Second Samuel Decl. ¶ 6.

records of meetings with third parties (Request No. 2), documents relating to Cantor's actual or contemplated business dealings with third parties (Request No. 3), and documents concerning the Related-Party Sale and the En Masse Resignations (Request No. 6). These materials are directly relevant to the Foreign Proceedings and unavailable absent an order authorizing section 1782 discovery.

Finally, even if some of the discovery were available in the Foreign Proceedings, the Court should still allow Swan to seek discovery from respondents. There are myriad reasons why such discovery may still be needed, including that a party accused of dishonesty may not reliably produce all responsive information, and that the fact that a third party has certain information may itself be relevant, *see Stokes v. Wayne Cnty.*, No. 21-CV-6657-EAW, 2023 WL 4144507, at *7 (W.D.N.Y. June 23, 2023). In any event, that the requesting party already has access to documents is not a bar to third-party discovery. *See, e.g.*, *Kingsway Fin. Servs., Inc. v. PricewaterhouseCoopers LLP*, No. 03-CIV-5560-RMB-HBP, 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008); *Burns v. Bank of America*, No. 03-CIV-1685-RMB-JCF, 2007 WL 1589437, at *15 n.13 (S.D.N.Y. June 4, 2007).[8]

### B.  BVI and English Courts Are Receptive to U.S. Assistance

Cantor does not engage with the second *Intel* factor, because there is no conceivable argument that BVI or English Courts are unreceptive to U.S. federal court assistance. *Cf. In re Att'y Gen. of Brit. Virgin Islands*, No. 1:21-MC-00768-JGK, 2021 WL 5361073, at *1 (S.D.N.Y.

---

[8] The cases Cantor cites are distinguishable. In *In re Atvos Agroindustrial Investimentos S.A.*, 481 F. Supp. 3d 166, 176 (S.D.N.Y. 2020) and *In re IPC Do Nordeste, LTDA, For an Ord. Seeking Discovery Under 28 U.S.C. 1782*, No. 12-50624, 2012 WL 4448886 (E.D. Mich. Sept. 25, 2012), the foreign parties were subsidiaries of the U.S. discovery targets, and therefore "for all intents and purposes," the petitioner was seeking discovery from its opponent in the foreign proceeding. And in *Pereira v. Nucor Corp.*, No. CV 3:23-MC-00024-FDW-SCR, 2023 WL 4143229, at *4 (W.D.N.C. June 22, 2023), the respondent demonstrated that it possessed no information beyond what petitioner could obtain in foreign litigation.

Oct. 29, 2021) ("[T]he [Eastern Caribbean Supreme Court at the BVI] is a foreign tribunal receptive to U.S. federal court assistance."); *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, 2024 WL 555780, at *11 (S.D.N.Y. Jan. 18, 2024), report and recommendation adopted, No. 23-MC-208-JGLC-GS, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) ("Courts in this District applying the second *Intel* factor routinely find that courts in the United Kingdom ... are [ ] receptive to Section 1782 discovery."). Cantor has the burden of showing that the Foreign Courts would be unreceptive to evidence obtained pursuant to Section 1782, *In re Auto-Guadeloupe Investissement S.A.,* No. 12-MC-21-RPP, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012), and it has failed to meet that burden. Since there is no authoritative proof, or any proof at all, that these courts would reject section 1782 evidence, the second *Intel* factor weighs in favor of granting the application.[9] *See* First Samuel Decl. ¶ 21; Declaration of Khaled Khatoun in Support of 1782 Application ("Khatoun Decl.") ¶ 18; *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *In re Zouzar Bouka*, 637 F. Supp. 3d at 88-89.

Cantor also bizarrely asserts that, if the Court grants the 1782 Application, and the BVI Court denies leave to bring the derivative proceeding, Cantor would "ironically be the only entity to produce discovery in connection with cases that do not transpire," which "would be nonsensical and highly unfair." Opp. at 13. This argument again ignores the pending BVI Proceeding and is both irrelevant to the *Intel* analysis and factually incorrect. As Cantor acknowledges, Swan was granted leave to issue a subpoena to another third party, Synteq Digital, Inc., seeking discovery for use in the same Foreign Proceedings, and Synteq has produced documents in response to

---

[9] Cantor's speculation about whether "Swan requires discovery from Cantor in order to show the BVI High Court that it has a colorable derivative claim" is irrelevant to the question of whether the BVI Court would be receptive to section 1782 evidence. Nor must Swan show that it "requires" the discovery from Cantor. Instead, Swan must only demonstrate, as it has, that the discovery is "for use in" the foreign proceeding. *See Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015). It is unclear why Cantor cites *In re Sargeant*, 278 F. Supp. 3d 814 (S.D.N.Y. 2017), which does not address the *Intel* factors ("this Court need not proceed to an analysis of the *Intel* factors." *Id.* at 819), and in which there was no pending or even reasonably contemplated proceeding.

Swan's requests.[10] Second Declaration of Arthur D. Middlemiss dated April 16, 2026 ("Second Middlemiss Decl.") at ¶ 3.

### C. The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Restrictions

Cantor argues that the 1782 Application is an attempt to circumvent purported discovery limitations in the Foreign Proceedings because the scope of discovery is narrower in the BVI and England. Opp. at 13–14. Whether or not that is the case, "[t]he Supreme Court expressly held in *Intel* that Section 1782 does *not* include a foreign-discoverability rule – that is, the statute does not require a 'threshold showing by the party seeking discovery that what is sought be discoverable in the foreign proceeding.'" [11] *In re SBK ART LLC*, 168 F.4th 68, 83 (2d Cir. 2026) (quoting *Intel*); *see also Mees*, 793 F.3d at 303 (2d Cir. 2015). Instead, this *Intel* factor considers whether the discovery that is sought is *affirmatively prohibited* in the foreign jurisdiction, *see In re Accent Delight*, 791 F. App'x at 251 (2d Cir. 2019); *see also Metallgesellschaft AG v. Hodapp*, 121 F.3d 77, 80 (2d Cir. 1997), and here it is not, First Samuel Decl. ¶ 21, Khatoun Decl. ¶ 18. Cantor does not identify any BVI or UK law that prohibits the disclosure or use of the materials Swan seeks. Therefore, the third *Intel* factor also weighs in favor of granting the application.

### D. The Discovery Sought is not Unduly Intrusive or Burdensome

Swan's proposed document requests are narrowly tailored to a limited number of relevant topics – the Mining Assets Diversion, the Related-Party Sale, the *En Masse* Resignations, and the relationship between Tether and Cantor – and a three-year time period. Nevertheless, Cantor complains that the proposed requests are "unduly intrusive" and "burdensome." Opp. at 6. "[S]uch

---

[10] *In re Electric Solidus, Inc.*, No. 1:25-cv-01509-UNA (D. Del.), Dkts. 1, 10, 11.

[11] Cantor also contradicts itself by asserting, on the one hand, that "the same material is obtainable from the parties to the foreign proceeding," Opp. at 11, and, on the other hand, that the UK and BVI "do not entertain the same breadth of discovery as U.S. courts," suggesting " an attempt to circumvent the . . . more restrictive discovery practices of the foreign forum," Opp. at 13 (quotation omitted). Cantor cannot have it both ways.

objections are properly addressed not at the Section 1782 stage – which merely opens the gate to discovery – but after a Section 1782 petition is granted, through the ordinary rules governing discovery under the Federal Rules of Civil Procedure." *In re SBK ART LLC*, 168 F.4th 68, 72 (2d Cir. 2026). In any case, Cantor does not particularize any burden that the proposed requests would impose. *See Samsung Electronics Co., Ltd v. Microchip Technology, Inc.*, 347 F.R.D. 252, 260 ("[T]he mere assertion that tracking down information and documents will be more difficult is not enough to show that the burden is undue.") (internal citation omitted); *Ex Parte Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) ("[I]nconvenience alone will not justify an order to quash a subpoena that seeks potentially relevant [information].") (internal citation omitted). Therefore, this *Intel* factor also weighs in favor of granting the 1782 Application.

### E. The Application Seeks Appropriate Discovery in Support of Legitimate Proceedings

Unable to successfully challenge the statutory requirements or the *Intel* factors in any other way, Cantor, in its own attack-laden brief, contends that the Application should be denied because it was brought in bad faith or to harass Cantor and Lutnick. However, Cantor has failed to meet its burden of submitting sufficient evidence to make this showing. *See In re SBK ART LLC*, 2025 WL 1537474 at \*7 (citing *In re Accent Delight*, 869 F.3d at 135 (respondent has the burden to "bring evidence of such chicanery to the . . . court's attention.")). On the other hand, "[i]t is not [Swan's] burden to demonstrate good faith." *In re Vale S.A.*, No. 20-MC-199-JGK-OTW, 2020 WL 4048669, at \*5 (S.D.N.Y. July 20, 2020). Since Swan has shown the relevance of the evidence it seeks, the Application should be granted. *See id.* (granting 1782 application because respondent "has not provided sufficient evidence to demonstrate bad faith," while applicant "has provided submissions sufficient to show relevance for purposes of discovery."). The 1782 Application properly describes the close relationship between Cantor and Lutnick, on the one hand, and Tether,

9

on the other hand, as well as the reasons why Swan believes that Cantor and Lutnick were involved in the underlying scheme at issue in the Foreign Proceedings. This detail is necessary to explain why Swan seeks discovery from Cantor and Lutnick. Furthermore, the Application details Lutnick's personal involvement to explain why his testimony is necessary, notwithstanding his previous high-level role at Cantor and now in the U.S. Government. In any case, Lutnick has not objected to the Application, and counsel for Cantor specifically notes that he does not represent Lutnick, such that he cannot object on Lutnick's behalf in any case. Opp. at 1 n. 1.

Because the Application seeks appropriate discovery in support of legitimate pending and contemplated foreign litigation, meets the requirements of section 1782, and satisfies the *Intel* factors, the Application should be granted.

## CONCLUSION

For the foregoing reasons, and those explained in the 1782 Application, Applicant respectfully requests that the Court grant the Application.

Dated: April 16, 2026

/s/    Arthur D. Middlemiss
Arthur D. Middlemiss (NY Bar No. 2683209)
arthur.middlemiss@lbkmlaw.com
Chiara Spector-Naranjo (NY Bar No. 4463790)
chiara.spector-naranjo@lbkmlaw.com
LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
10 Grand Central
155 East 44th Street, 25th Floor
New York, New York 10017
(212) 826-7001

LEWIS BAACH KAUFMANN MIDDLEMISS PLLC
1050 K Street NW, Suite 400
Washington, DC 20001
(202) 833-8900

*Counsel for Applicant Electric Solidus, Inc.*